**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| **CLIFTON CUNNINGHAM and DON TEED,** on behalf of themselves and all others similarly situated, | **No. 17 Civ. 845** |
| **Plaintiffs,** -against- | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| **FEDERAL EXPRESS CORPORATION, d/b/a FEDEX EXPRESS, FEDEX CORPORATION EMPLOYEES' PENSION PLAN, and FEDEX CORPORATION RETIREMENT SAVINGS PLAN,** | **JURY TRIAL DEMANDED** **EXEMPT FROM FILING FEES UNDER 38 U.S.C. § 4323(h)(1)** |
| **Defendants.** | |

Plaintiffs Clifton Cunningham and Don Teed, individually and on behalf of all others similarly situated, by and through their attorneys, allege as follows:

<u>**NATURE OF THE ACTION**</u>

1.      This is an action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.*, on behalf of a class of current and former employees of Federal Express Corporation d/b/a/ FedEx Express ("FedEx") who did not receive the full pension and retirement contributions mandated by USERRA for the periods in which the FedEx employees took leave from FedEx to honorably serve in the United States Armed Forces.

2.      Since at least 2002, FedEx and its retirement plans, which include the FedEx Corporation Employees' Pension Plan and FedEx Corporation Retirement Savings Plan ("Pension Plan Defendants" or "the Plans"), have been required by federal law to make pension contributions to FedEx employees for periods in which they engaged in qualified military service.

1

3.    Because thousands of servicemembers employed by FedEx regularly work hours and receive compensation that are not fixed, their compensation has been "not reasonably certain." 38 U.S.C. § 4318(b)(3).  As a result, contributions for thousands of FedEx employees' periods of qualified military service must be calculated using a formula that measures each employee's own average rate of compensation during the 12-month period immediately prior to the period of qualified military service.  This formula is commonly called a "12-month look-back" rule.

4.    Upon information and belief, since 2002 FedEx and the Pension Plan Defendants have applied a policy for making pension and retirement contributions for periods of qualified military service that did not comply with USERRA, because they did not apply the 12-month look-back formula that USERRA requires.   Contrary to the text of USERRA § 4318, and the Sixth Circuit's interpretation of § 4318, FedEx has applied a formula that is not a true 12-month look-back to determine the pension and retirement contributions and credits of employees whose compensation is not reasonably certain.  FedEx's formula multiplies the average rate of pay during the 12-month period before a period of military service by the number of hours the FedEx employee would have worked without taking into account overtime or other factors that would increase the number of hours the FedEx employee works ("FedEx's formula").

5.    For FedEx employees like Plaintiffs Cunningham and Teed whose compensation is not reasonably certain because they often work more than 40 hours in a week and receive overtime compensation, FedEx's compensation formula always—or nearly always—causes the employees to receive lower amounts of USERRA pension and retirement contributions and credits than the amounts that are required under USERRA's 12-month look back rule for their periods of qualified military service.

## JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because this action arises under USERRA, a federal law. This Court has subject matter jurisdiction over the USERRA claim pursuant to 38 U.S.C. § 4323(b)(3), which provides the district courts of the United States with jurisdiction over any USERRA action brought against a private employer. FedEx is a private employer because it "pays salary or wages for work performed or that has control over employment opportunities." 38 U.S.C. § 4303(4)(a). In addition, the Pension Plan Defendants are "employers" under USERRA, because 38 U.S.C. § 4303(4)(C) deems an "employee pension benefit plan described in [ERISA §] 3(2) . . . to be an employer" regarding the pension obligations in 38 U.S.C. § 4318.

7.      Venue is proper in this District under 38 U.S.C. § 4323(c)(2), because FedEx, "the private employer of the person" who has filed this lawsuit, "maintains a place of business" in this District at the Nashville International Airport. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims in this action occurred in this District.

## THE PARTIES

8.      Plaintiff Clifton Cunningham is and has been employed as a mechanic by Federal Express Corporation since 2001. Plaintiff Cunningham regularly took leave from his employment at FedEx to serve in the military from 2001 through 2012. Plaintiff Cunningham works for FedEx in the State of Tennessee. Plaintiff Don Teed is and has been employed as a mechanic by Federal Express Corporation since 2001. Plaintiff Teed frequently took leave from his employment at FedEx to engage in qualified military service, including in 2001 to 2002, 2006 to 2008, and 2010 to 2011. Plaintiff Teed works for FedEx in Massachusetts.

3

9.     Federal Express Corporation is the world's largest express transportation company providing delivery to more than 220 countries and territories. FedEx has more than 400,000 employees worldwide. It is an employer within the meaning of 38 U.S.C. § 4303(4)(A) with its principal place of business located at 3610 Hacks Cross Road, Memphis, Tennessee 38125.

10.     Defendants FedEx Corporation Employees' Pension Plan ("Pension Plan") and FedEx Corporation Retirement Savings Plan ("Retirement Plan") (collectively, "the Plans") are employee benefit plans within the meaning of ERISA § 3(2) sponsored by Federal Express Corporation and its subsidiaries. The Plans are employee pension benefit plans within the meaning of 38 U.S.C. § 4318(a)(1)(A). The Plans are also an employer within the meaning of USERRA § 4303(4)(C) for the purpose of the FedEx's "obligation to provide [the pension] benefits described in section 4318." The trustee of the Pension Plan, State Street Bank and Trust Co., is located in Boston, Massachusetts, and the trustee of the Retirement Plan, Vanguard Fiduciary Trust Co., is located in Malvern, Pennsylvania.

## CLASS ACTION ALLEGATIONS

11.     Plaintiffs brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following persons:

(A) All current and former employees of Federal Express Corporation or any subsidiary or division of Federal Express Corporation in the United States who since January 1, 2002:

(1) have been participants in the FedEx Corporation Employees' Pension Plan or the FedEx Corporation Retirement Savings Plan;

(2) earned monthly or weekly compensation that is not fixed, because they (a) earn overtime compensation or premium pay or (b) work hours or shifts that are variable;

4

(3) received a retirement or pension contribution or credit for a period of qualified military service of 7 days or more that ended on or after January 1, 2002; and

(4) had an average rate of compensation during the 12 months prior to the commencement of one or more periods of qualified military service (or if shorter, the period of employment immediately preceding such period of qualified military service) that exceeded the rate of compensation that was actually used to determine the retirement or pension compensation or credit for the person's one or more periods of qualified military service.

(B) The beneficiaries of all such persons.

12.     Excluded from the Class are the following persons: (a) all former or current individuals who previously reached settlements with or judgments against Defendants resolving or releasing any claims arising during the Class Period under USERRA related to inadequate pension contributions for periods of military leave; (b) any person who served as a fiduciary of the Plan and their beneficiaries under the Plans; (c) any member of the immediate family of and any heirs, successors or assigns of any such person; Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and (d) the Judges to whom this case is assigned and any member of the Judges' immediate family.

**Impracticability of Joinder**

13.     The class is so numerous that joinder of all members is impracticable. According to the most recent Form 5500 for the year 2015, the FedEx Corporation Retirement Savings Plan had 175,270 active participants in the Plan.  According to the most recent Form 5500 for the year 2014, the FedEx Corporation Employees' Pension Plan had 120,019 active participants.  Upon information and belief, thousands of former and current FedEx employees are members of the proposed Class.

14. FedEx employs workers, including members of the proposed Class, throughout the United States. Upon information and belief, the members of the Class are geographically dispersed.

**Commonality**

15. The central questions in this case concern whether the FedEx employees' federal statutory rights under USERRA were violated by Defendants, including by failing to make pension or retirement contributions or credits to the FedEx employees and failing to ensure that the Plans received contributions or credits that properly accounted for the FedEx employees who took military leave.

16. As FedEx and the Plans adopted and applied a uniform policy for calculating and making contributions owed under USERRA with respect to the military leave of FedEx employees whose compensation was not reasonably certain, the answer to these questions will produce common answers.

17. Plaintiffs' claims raise subsidiary common questions that will also have common answers for each Class Member, including, but not limited to, the following:

(a) Whether the rate of compensation that the FedEx employees would have received but for their qualified military service was "not reasonably certain" within the meaning of USERRA, 38 U.S.C. § 4318;

(b) Whether the policy that was implemented for collecting and paying pension or retirement contributions or credits for periods of qualified military service was contrary to USERRA, 38 U.S.C. § 4318;

(c) Whether Defendants' violations of USERRA, 38 U.S.C. § 4318, were willful?

(d) What, if any, other relief should be granted?

6

18. Because the pension or retirement contributions or credits for periods of the FedEx employees' qualified military service were based on a uniform policy and any recovery can be paid into the Plans or the FedEx employees' accounts in the Plans, all issues regarding relief are common.

19. Even if the ultimate allocation of recovery into the FedEx employees' individual accounts is considered, the unifying issue concerning the policy is the failure to consider each employee's average rate of compensation during the 12 months prior to the period of military leave. As the FedEx and the Plans acted in a systematic manner with respect to the Plans and the Class Members, all members of the Class suffered the same type of injury based on a single policy, and resolving the claims of the Class will be based on common legal and factual questions.

**Typicality**

20. Plaintiffs' claims are typical of the other members of the proposed Class. Plaintiffs challenge a single policy by which FedEx made and the Plans received pension and retirement contributions or credits for periods of the FedEx employees' qualified military service without regard to each employee's average rate of compensation during the 12 months prior to the period of qualified military service.

21. The relief sought consists primarily of: (1) a declaration establishing that FedEx and the Plans violated USERRA; (2) an order requiring FedEx and the Plans to recalculate the pension and retirement benefits owed to members of the Class; and (3) an order that the restored losses be allocated into the accounts of the members of the Class.

**Adequacy**

22.     Plaintiffs will fairly and adequately protect the interests of other members of the Class. Plaintiffs are aware of no conflict with any other member of the Class. Plaintiffs understand their obligations as class representatives, have already undertaken steps to fulfill them, and are prepared to continue to fulfill their duties as class representatives.

23.     Defendants have no unique defenses against the Plaintiffs that would interfere with Plaintiffs' representation of the Class.

24.     Plaintiffs' counsel are experienced in federal court class action litigation, including civil rights and employee benefits litigation, and have considerable experience and expertise in the area of USERRA.

**Rule 23(b)(1)**

25.     This action is properly maintainable as a class action under Rule 23(b)(1) of the Federal Rules of Civil Procedure, because the central question in this litigation is whether FedEx and the Plans violated USERRA in connection with calculating and making pension and retirement contributions and credits to the Plan based on the FedEx employees' periods of qualified military service.

26.     Administration of a pension plan requires that all similarly situated participants be treated consistently. As a practical matter, resolution of whether the appropriate amount of contributions were made to the Plans or any participant's account using the policy applied here would be dispositive of that matter for other members of the Class.  Likewise, conflicting interpretations as to the manner by which the amount should have been calculated and contributed or credited to the Plan and to the individual accounts of similarly situated

8

participants would create the risk of establishing inconsistent standards of conduct for the Plan, its administrator, and any subsequently-appointed independent fiduciary.

**Rule 23(b)(3)**

29.     This action is also properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

30.     The questions of law and fact common to the members of the Class predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

31.     By resolving the common issues described above in a single class proceeding, each member of the proposed Class will receive a determination of whether FedEx and the Plans violated USERRA, and will receive the remedy that should be provided under USERRA.

32.     Upon information and belief, there is only one pending lawsuit in which a member of the proposed Class has raised similar allegations involving Defendants.  In that action, *Kenneth E. Savage v. Federal Express Corporation*, No. 16-5244 (6th Cir.), the U.S. Court of Appeals for the Sixth Circuit ruled that FedEx's formula for making pension or retirement contributions to employees whose compensation is not reasonably certain is "at odds with the look-back rule in [USERRA] § 4318."  *Savage v. Federal Express Corp.*, 856 F.3d 440, 453-54 (6th Cir. 2017).

33.     This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, and, as a result of FedEx's significant operations in this District, a substantial part of the Class likely earned their pension and retirement benefits in this District, and at least a portion of the Class likely resides in this District.

34.     There are no difficulties in managing this case as a class action.

# FACTUAL ALLEGATIONS

## The Pension and Retirement Rights Mandated by USERRA

35.     FedEx employs thousands of men and women who also serve their country in the United States Armed Forces.

36.     When these FedEx employees take military leave to serve in the Armed Forces, federal law requires FedEx to treat these employees as if they never took leave from their civilian jobs.  For example, USERRA requires FedEx to reemploy FedEx employees who take military leave, and restore the rights and benefits related to the employees' positions.  38 U.S.C. §§ 4312, 4316.

37.     In addition, USERRA mandates that for the purpose of pension and retirement benefits an employee who returns to his job after serving in the military must be treated as if he or she never took a day off from his or her civilian job.  38 U.S.C. § 4318.  This mandate applies not only to an employee's traditional employer (here, FedEx), but to the pension or retirement plan from which employees are entitled to receive benefits.

38.     The pension and retirement rights of servicemembers have been protected for decades because Congress decided that a servicemember's retirement security should not be compromised simply because he or she answers the call to duty—no more than a servicemember should lose his or her civilian job due to serving in the Armed Forces. These rights are central to a statutory scheme that the U.S. Supreme Court has said is the "mechanism for manning the Armed Forces of the United States." *Alabama Power Co. v. Davis*, 431 U.S. 581, 583 (1977).

39.     As employers within the meaning of USERRA, FedEx and the Plans have been required to comply with USERRA and ensure that FedEx employees receive the pension and retirement contributions and credits mandated by 38 U.S.C. § 4318.

10

40.     Pursuant to 38 U.S.C. § 4318(a)(1)(A), FedEx and the Plans have been required to comply with USERRA § 4318(a)(2), which provides as follows:

> (A) A person reemployed under this chapter shall be treated as not having incurred a break in service with the employer or employers maintaining the plan by reason of such person's period or periods of service in the uniformed services. (B) Each period served by a person in the uniformed services shall, upon reemployment under this chapter, be deemed to constitute service with the employer or employers maintaining the plan for the purpose of determining the nonforfeitability of the person's accrued benefits and for the purpose of determining the accrual of benefits under the plan.

41.     For each period of military service, USERRA § 4318(b)(1) provides that the employer is "liable to an employee pension benefit plan for funding any obligation of the plan to provide the benefits described in subsection (a)(2) [of § 4318] and shall allocate the amount of any employer contribution for the person in the same manner and to the same extent the allocation occurs for other employees during the period of service."

42.     FedEx is an employer under USERRA because it "pays salary or wages for work performed or that has control over employment opportunities."   38 U.S.C. § 4303(4)(a).  The Plans, which are "employee pension benefit plan[s] described in Section 3(2) of [ERISA]," are employers under USERRA with respect to its "obligation to provide [the pension] benefits described in section 4318."  38 U.S.C. § 4303(4)(C).

43.     To "comput[e] an employer's liability" to make pension contributions under § 4318(b)(1), USERRA § 4318(b)(3) provides that "the employee's compensation during the period of service described in subsection (a)(2)(B) shall be computed":

> (A) at the rate the employee would have received but for the period of service described in subsection (a)(2)(B), or (B) in the case that the determination of such rate is not reasonably certain, on the basis of the employee's average rate of compensation during the 12-month period immediately preceding such period (or, if shorter, the period of employment immediately preceding such period).

11

44.     Therefore, under USERRA, when the amount of compensation that a specific employee would have earned during the period of military service (had he or she continued actively working for the employer) is "not reasonably certain," then the amount of the pension contribution or credit for the period of military service must reflect the employee's own "average rate of compensation during the 12-month period immediately preceding such period (or, if shorter, the period of employment immediately preceding such period)."  38 U.S.C. § 4318(b)(3).

45.     This rule set forth in § 4318(b)(3) is commonly referred to as the "12-month look-back rule," because for the purposes of identifying the compensation that will determine the servicemember's pension or retirement benefits, the employer must look to the 12-month period that immediately precedes the servicemember's military service (or a shorter period if the employee did not work for a full 12 months).

46.     The purpose of the 12-month look-back rule is to ensure that workers whose ordinary compensation is not reasonably certain—*i.e.*, not fixed—will not receive smaller pension or retirement contributions or credits than they might have received if they had continued working for their civilian employers.

47.     Workers who receive premium pay like overtime, workers who have hours that vary significantly, and workers whose compensation is impacted by commissions are entitled to receive the benefit of USERRA's 12-month look-back rule.  This rule makes a significant difference for servicemembers and ensures that they will not be disadvantaged in their retirement security by their service.  For example, if an employee routinely works overtime (such as a non-exempt employee who averages 50 hours of work per week), his or her compensation or credit under the 12-month look-back rule will be greater than simply identifying what the employee

12

would have earned if he or she had worked a 40-hour a week schedule and had not earned overtime.

**FedEx's Pension and Retirement Plans and USERRA Contributions**

48.     From 2002 to present, FedEx has sponsored various pension and retirement plans for its employees.  FedEx has sponsored the FedEx Corporation Employees' Pension Plan, a "defined benefit" plan that provides a defined benefit to employees when they retire (i.e., a fixed amount to be paid for life).  FedEx has also sponsored the FedEx Corporation Retirement Savings Plan, a "defined contribution" plan in which FedEx makes a contribution to an employee's retirement account that matches a portion of an employee's compensation that the employee voluntarily contributes into his or her own account.

49.     FedEx's defined benefit plan includes two different formulas for determining the defined benefit that employees will receive upon retirement (or other limited circumstances): the Traditional Pension Benefit formula and the Portable Pension Account formula.  The Traditional Pension Benefit formula applies to employees who were employed before May 31, 2008 (it was capped at that time, when FedEx transitioned its workforce to a different formula).  The Portable Pension Account formula applies to current employees, and applied to former employees who worked on or after May 31, 2008.  FedEx's defined contribution plan is called the Retirement Savings Plan.

50.     Under FedEx's defined benefit plan, the amount of the defined benefit is influenced in large part by the amount of Compensation Credit the employee receives.  The Compensation Credit, in turn, is determined by the employee's prior calendar year of eligible earnings and the compensation credit percentage for the employee.  (The relevant credit percentage is based on the person's age and years of service, and currently ranges from 5% to

13

8%).  In addition, for employees who were employed by FedEx before June 1, 2008, the amount of the employee's defined benefit is influenced by the Transition Compensation Credits.  The Transition Compensation Credits rely on the same factors as the Compensation Credit (the employee's calendar year eligible earnings and compensation credit percentage, except that the years that are taken into account are those prior to June 1, 2008 when FedEx sponsored the Traditional Pension Benefit).

51.     Under FedEx's defined benefit plan, an employee cannot receive any service credit, Compensation Credits, or Traditional Compensation Credits for a plan year (June 1 to May 31) unless he or she is credited with 1,000 hours of service with a FedEx Controlled Group Member or foreign affiliate.

52.     FedEx states in its Summary Plan Description of its pension and retirement plans that it considers service in the Armed Forces as part of an employee's credited service under the defined benefit plan (*i.e.*, an employee's eligible earnings and hours of service).  Accordingly, the amount of credited service, earnings, and hours of service that are provided to a servicemember will directly impact the amount of his or her defined benefit upon retirement and will impact his or her eligibility to receive any service credit for a specific plan year.

53.     Under FedEx's defined contribution plan, employees can contribute anywhere from 1% to 50% of their paycheck into their individual retirement accounts on a pre-tax basis (with certain annual limits set by the Internal Revenue Service), and FedEx matches a certain percentage of the employee's eligible earnings that he or she contributes.  Currently, FedEx matches 100% of 1% of the employee's eligible earnings, and 50% of the employee's next 5% of eligible earnings.

14

54.     Under FedEx's defined contribution plan, employees who engage in military service and satisfy USERRA's reemployment requirements can make up any missed contributions to their accounts (even though FedEx has not paid the employee for that period of time). This make-up contribution procedure is mandated by USERRA. 38 U.S.C. § 4318(b)(2). If an employee makes the contribution of a percentage of his "imputed earnings" for a period of military leave, FedEx will match the same amounts as it ordinarily would do with respect to employees who are not serving in the military.

55.     FedEx states in its Summary Plan Description of its pension and retirement plans that for the purpose of the defined contribution plan, "Make-up contributions are calculated using the average of your 12 months' eligible earnings (or all, if less than 12 months) immediately prior to the [Military Leave of Absence]." This statement, however, is not accurate. As described below, FedEx does not apply a true 12-month look back, because it determines the servicemember's eligible earnings by multiplying the hourly rate the employee worked at *before* the military service by the number of hours the employee is expected to be scheduled to work *during* a period of military leave.

56.     The amount of eligible earnings that FedEx credits for a period of military leave directly influences the amount of contributions FedEx will match for that period of leave in the defined contribution plan. For example, if an employee's eligible earnings are considered to be $100,000 for a year of military service, and he or she makes the highest contribution that FedEx will match (6% or $6,000), FedEx will contribute $3,500 for that year of military service. However, if the employee's eligible earnings are only considered to be $80,000 for that same year of military service, and the employee makes the highest contribution that FedEx will match (6%, or $4,800), FedEx will only contribute $2,800 for that year of military service. The

15

servicemember will, thus, have his or her matching contribution reduced by $700 for that year of military leave.

**FedEx and the Plans Disregarded the 12-Month Look-Back Rule**

57.     Although FedEx has told its employees and former employees that it determines the compensation, service credit, and earnings that they will receive for periods of qualified military service by applying the 12-month look back rule, FedEx has not actually applied a 12-month look back rule.

58.     As FedEx disclosed in recent litigation over FedEx's pension and retirement contributions, FedEx and, in turn, the Plans, rely on a formula for determining contributions and credit—including "imputed earnings"—under USERRA that is not a true 12-month look back.

59.     To calculate servicemembers' pension contributions and credit, FedEx takes two steps to determine what "imputed earnings" will be used to identify the amount of pension or retirement contributions or credits the employee receives for each period of military leave.

60.     First, FedEx identifies the employee's average hourly "rate of pay" from the 12 months preceding the employee's military service.  To determine this rate of pay, FedEx divides the total amount of the employee's earnings from that 12-month period by the number of hours FedEx paid the employee during the same 12-month period.  The formula is "Total Pensionable Earnings ÷ Total Hours Paid) = Average Rate of Pay."

61.     Second, FedEx multiplies this average hourly rate of pay from the 12-month period (from step one) by the number of hours the employee would have been regularly scheduled to work on each day *during the period in which* he or she was on a military leave of absence, *i.e.*, the number of "Imputed Hours of Military Service."  The Imputed Hours of Military Service do not include any additional hours that the employee might have worked

16

during a period of military leave beyond his or her normal schedule—for example, a mechanic who is ordinarily scheduled to work 40 hours a week but routinely or even occasionally picks up an extra shift or extends a shift so that he or she works more than his regular 40 hours would not have those hours considered as part of his or her Imputed Hours of Military Service.

62. The equation that FedEx uses to describe its overall calculation is "(Average Rate of Pay × Imputed Hours of Military Service) = Imputed Earnings."

63. This method or formula for calculating the imputed earnings of employees during their periods of military service does not comply with USERRA § 4318(b)(3). FedEx's pension formula does not calculate the employee's pension or retirement contributions or credits based on USERRA's 12-month look-back rule, which requires FedEx to make pension contributions based on the "employee's average rate of compensation during the 12-month period immediately preceding" his military service. 38 U.S.C. § 4318(b)(3). Instead, FedEx's pension formula is a *hybrid* approach that relies on hourly rates *before* the military service begins and straight time hours *during* the military service. In other words, the total average compensation that the employee received during the 12-month period preceding his or her military service is not considered or taken into account by FedEx. The only information from the 12-month period that FedEx uses to determine imputed earnings for a period of military service is the hourly wage rate of the employee.

64. FedEx has acknowledged that it has an obligation to follow USERRA's special 12-month look-back rule for calculating the earnings of mechanics like Cunningham and Teed whose rate of compensation was "not reasonably certain," because they routinely receive overtime pay and other premium pay. But FedEx has not complied with the 12-month look-back rule that applies to employees whose compensation is "not reasonably certain."

17

65.     As the Sixth Circuit recently held, FedEx's method or formula for calculating the imputed earnings of FedEx employees whose compensation is not reasonably certain directly contravenes the plain language of § 4318(b)(3) and the interpretation of § 4318(b)(3) that other courts and the Department of Labor have issued.  The Sixth Circuit explained that "Allowing FedEx to calculate [a servicemember's] earnings based on its estimate of his hours worked during a current leave is [] at odds with the look-back rule in § 4318." *Savage v. Federal Express Corp.*, -- F.3d --, No. 16-5244, Slip Op. at 18 (6th Cir. May 10, 2017).  Instead of using FedEx's formula, FedEx should calculate a servicemember's "pension benefit contributions based on an average rate of compensation (including *both* pay rate and hours) during the 12-months prior to each period [the servicemember] was on a military leave of absence." *Id.* (emphasis in original).

66.     Where an employee's compensation is "not reasonably certain" because his work schedule is not fixed and he regularly works and earns more in certain weeks, USERRA imposes a straightforward rule that pension contributions should be based on an "employee's average rate of compensation during the 12-month period immediately preceding" his military service, *i.e.*, the average of all his earnings from the 12 month period *before* military service. 38 U.S.C. § 4318(b)(3).  Because FedEx's pension and retirement formula does not make pension contributions based on the average *earnings* from the 12-month period—it uses hourly wage rates from the 12-month period *before* military service multiplied by the straight time hours worked *during* the period of military service—it fails to satisfy the express language of USERRA's 12-month look-back rule in 38 U.S.C. § 4318(b)(3).

67.     For FedEx employees like Plaintiffs Cunningham and Teed, FedEx mechanics, and other members of the proposed Class who have regularly worked extra hours beyond their

18

ordinary shifts and earn overtime pay when they work more than 40 hours in a work week, FedEx's formula always causes the employees to receive lower amounts of USERRA pension or retirement contributions or credits than the amounts that are required under USERRA's 12-month look back rule for their periods of qualified military service. As a result, Cunningham, Teed, other FedEx mechanics, and other FedEx employees who have regularly worked extra hours beyond their ordinary shifts and earn overtime pay have received smaller pension and retirement contributions or credits than they were entitled to receive under USERRA § 4318.

68. Plaintiffs Cunningham and Teed are both participants in the FedEx Corporation Employees' Pension Plan and FedEx Corporation Retirement Savings Plan. Upon retiring from FedEx, both Cunningham and Teed will receive a defined benefit under the Traditional Pension Benefit formula and the Portable Pension Account formula of the FedEx Corporation Employees' Pension Plan. During their employment, Cunningham and Teed have previously and routinely contributed a portion of their wages into the Retirement Savings Plan of the FedEx Corporation Retirement Savings Plan. Both Cunningham and Teed are vested in the FedEx Corporation Employees' Pension Plan and FedEx Corporation Retirement Savings Plan.

69. In 2010, FedEx made a matching USERRA mak-up contribution into the Retirement Savings Plan account of Cunningham, which it identified as "MILITARY LEAVE EMPLOYER MATCH" in the amount of $1,001.30. This matching contribution matched USERRA make up contributions that Cunningham had made (and had attempted to make) from 2008 to 2010. In 2010, when FedEx made the matching contribution, it did not specify the time period associated with this matching contribution.

70. Teed has routinely withheld from his earned wages from working at FedEx more than the maximum percentage of wages that FedEx will match, with the expectation that FedEx

19

would treat Teed's above-maximum percentage contribution as a USERRA make-up contribution for the deemed earnings that he was credited for when he engaged in qualified military service in the same year (as FedEx has done for other employees who engaged in qualified military service). However, FedEx failed to make any matching USERRA contributions for Teed for his periods of military service.

72. FedEx similarly failed to make matching contributions for other members of the proposed Class who routinely withheld from their earned wages more than the maximum percentage of wages that FedEx will match, with the expectation that FedEx would treat the employees' above-maximum percentage contribution as a USERRA make-up contribution for the deemed earnings that they were credited for when they engaged in qualified military service in the same year, or members of the proposed Class who asked FedEx to inform them about the amount of make-up contributions that they could make to the Retirement Savings Plan and that FedEx would match.

73. Upon information and belief, due to the USERRA violations described above, to date dozens to hundreds of members of the proposed Class have received defined pension benefit payments that are lower than they would have been had FedEx applied a USERRA credit or contribution formula that complied with USERRA; and each month, dozens to hundreds of additional proposed Class Members begin receiving defined pension benefit payments that are lower than they would have been had FedEx applied a USERRA credit or contribution formula that complied with USERRA. In addition, upon information and belief, due to the USERRA violations described above, since at least January 1, 2002 and each year during the pendency of this litigation, FedEx has made and is continuing to make contributions to the Pension Plan that are lower than they would otherwise be had FedEx complied with USERRA, thereby depleting

20

the overall amount of funds that are available to pay the defined benefits of members of the proposed Class. In addition, due to the USERRA violations described above, since at least January 1, 2002 and each year during the pendency of this litigation, FedEx has made and is continuing to make matching contributions into the individual accounts of the proposed Class Members within the Retirement Plan that are lower than they ought to be had FedEx applied a USERRA credit or contribution formula that complied with USERRA.

74.     Both Cunningham and Teed are eligible today to receive pension benefit payments from the Pension Plan pursuant to the Portable Pension Account formula whenever they separate their employment with FedEx.

75.     Upon information and belief, FedEx possesses personnel data that identifies each period of military leave that each member of the proposed Class took since January 1, 2002, the amount of overall compensation that each member of the proposed Class received during the 12 month period prior to the employee's period of military leave from FedEx, the credit or contribution that the employee received for each period of military leave from FedEx, the USERRA make-up contributions that each employee made, and other information that can be used to easily and efficiently calculate the credit and/or contributions that each member of the proposed Class should have received and was denied due to the USERRA violations described above.

## COUNT I

### (Violation of USERRA, 38 U.S.C. § 4318, Against All Defendants)

76.     Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

77.     USERRA, 38 U.S.C. § 4318(a)(2)(B), provides that an employee's service in the uniformed service will be deemed to constitute service with the employer for purposes of determining the accrual of benefits under the pension plan.  This rule applies to both a defined benefit plan and a defined contribution plan.

78.     Pursuant to USERRA, 38 U.S.C. § 4318(b)(1), an employer reemploying a person after a period of service in the uniformed services is liable to the employee benefit pension plan for funding any obligation of the plan to provide benefits, including those accrued under USERRA § 4318(a)(2)(B).  An employer must also make a contribution to a pension or retirement plan where the employer's contribution is "contingent on" the employee first making a contribution.  38 U.S.C. § 4318(b)(2).  Because 38 U.S.C. § 4303(4)(C) deems an "employee pension benefit plan described in [ERISA §] 3(2) . . . to be an employer" regarding the pension obligations in 38 U.S.C. § 4318, the Pension Plan and the Retirement Plans are both employers with respect to the obligations that the Plans and FedEx have to servicemembers under USERRA.

79.     Pursuant to USERRA, 38 U.S.C. § 4318(b)(3)(B), for purposes of computing an employer's liability under § 4318(b)(1), the employee's compensation during the period of uniformed service must be computed "in the case that the determination of [the employee's rate of compensation] is not reasonably certain, on the basis of the employee's average rate of compensation during the 12-month period immediately preceding such period (or, if shorter, the period of employment immediately preceding such period)."

80.     From at least January 1, 2002 to the present, the compensation of Plaintiffs Cunningham and Teed, and members of the proposed Class, was not and has not been "reasonably certain" during the periods in which they engaged in qualified military service.

81.     During all or a portion of the time from January 1, 2002 to the present, the policy that FedEx and the Plans applied for making pension and retirement contributions to FedEx periods for periods of qualified military service was not made based on the employee's own average rate of compensation during the 12-month period immediately preceding his or her period of military leave.  Instead, in violation of USERRA, 38 U.S.C. § 4318(b)(3)(B), the formula FedEx and the Plans applied considered only the hourly wage rates from the 12-month period preceding the employee's period of military service and improperly relied upon hours from during the period of military service.

82.     By applying a policy for making pension and retirement contributions or credits to FedEx employees, whose rate of compensation was not "reasonably certain" for periods of qualified military service, that did not take into account each employee's prior 12-month average compensation, FedEx and the Plans violated and continue to violate USERRA.

83.     Because FedEx and the Plans applied their policy in violation of USERRA, Plaintiffs and the Class received pension credits and contributions in their defined benefit and defined contribution accounts that were smaller than what they would have received had FedEx and the Plans complied with USERRA.

84.     Defendants' violations of USERRA § 4318 were willful and in reckless disregard of the law.  Accordingly, Defendants should be required to pay liquidated damages to former and current FedEx employees whose pension and retirement benefits were reduced due to Defendants' violations of USERRA.  38 U.S.C. § 4323(d)(1)(C).  In fact, Defendants have not changed their policy for calculating pension and retirement credits under USERRA even after the Sixth Circuit held that Defendants' policy violates USERRA § 4318 and after Defendants

23

unsuccessfully sought a petition for rehearing en banc regarding the Sixth Circuit's adverse holding.

85.     To the extent that FedEx, the Pension Plan, or the Retirement Plan requires or purports to require servicemembers to file a claim for benefits or exhaust their administrative remedies in any manner before taking action to enforce their rights under USERRA (including USERRA § 4318), such policy, practice, or requirement is superseded and voided by 38 U.S.C. § 4302(b), which provides that USERRA "supersedes any . . . contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit."

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and respectfully requests that this Court award the following relief:

A.     Certify the proposed Class pursuant to Fed. R. Civ. P. 23(a), (b)(1), and/or (b)(3), appoint Plaintiffs Cunningham and Teed as the Class Representatives, and appoint Plaintiffs' counsel as Class Counsel.

B.     Declare that Defendants' policy with respect to the formula by which the pension and retirement contributions or credits related to Plaintiffs and the proposed Class Members' qualified military service were calculated by FedEx and the Plans violated the rights of Plaintiffs and the Class under USERRA, and order that FedEx and the Plans re-calculate pension and retirement benefits consistent with USERRA;

B.     Declare that Plaintiffs and the Class were and are entitled under USERRA to receive contributions and credits to their defined benefit and defined contribution pension and

retirement accounts in an amount that is based on their average rate of compensation during the 12-month period that immediately preceded a period of military leave (or, if shorter, the period of employment immediately preceding such period of military leave) if such average rate exceeded the rate of compensation that the FedEx and the Plan used to calculate the pension and retirement contributions or credits;

C. Require Defendants to fully compensate Plaintiffs and the Class for the loss of benefits suffered by reason of their failure to comply with the provisions of USERRA by awarding an amount that fully compensates Plaintiffs and the Class for Defendants' failure to make these pension and retirement contributions when originally due, including any lost earnings on the unmade contributions and/or awarding Plaintiffs and the Class prejudgment interest on the amount of contributions that were required to be made under USERRA but which Defendants failed to make (whichever amount is greater);

D. Order Defendants to comply with USERRA, 38 U.S.C. § 4318.

E. Order Defendants to pay all members of the Class liquidated damages in an amount to be determined at trial. 38 U.S.C. § 4323(d)(1)(C).

F. Require Defendants to pay attorneys' fees and costs pursuant to 38 U.S.C. § 4323(h), and/or this Court's inherent equitable authority and powers, and ordering the payment of reasonable attorneys' fees and expenses of this action to Plaintiffs' Counsel on the basis of the common benefit and/or common fund doctrine (or other applicable law) out of any money or benefit recovered for the Class or the Plans in this Action.

G. Grant such other and further relief as the Court deems proper, appropriate, just and/or equitable.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: September 1, 2017
Nashville, Tennessee

/s/ Peter Romer-Friedman

**OUTTEN & GOLDEN LLP**
Peter Romer-Friedman (admitted *pro hac vice*)
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001
Tel: (202) 847-4400
Fax: (202) 847-4410
prf@outtengolden.com

Michael J. Scimone (admitted *pro hac vice*)
685 Third Avenue, 25th Floor
New York, New York 10017
Tel: (212) 245-1000
Fax: (646) 509-2060
mscimone@outtengolden.com

**LAW OFFICE OF JOE NAPILTONIA**
Joseph A. Napiltonia (TN 026881)
219 Third Avenue North
Franklin, Tennessee 37064
Tel: (615) 734-1199
Fax: (615) 534-4141
joenapiltonia@gmail.com

*Counsel for Plaintiffs and the Proposed Class*